## GRISWOLD *vs.* GRISWOLD.

### *In the matter of the Estate of* JOHN GRISWOLD, *deceased.*

WHERE the will provided for the payment of an annuity to the testator's widow, in equal quarterly payments, on the first Mondays of January, April, July, and October, to commence immediately after the testator's decease, and the testator died on the fourth of August,—*Held,* that there should be no apportionment, and that a full quarterly payment became due on the first Monday of October succeeding the testator's death.

It is the duty of a life-tenant to keep down annual charges arising from taxes.

Taxes due at the death of the decedent should be paid from the personal estate, and taxes accruing subsequently are chargeable upon the land. There is no rateable apportionment, varying according to the period of the year the decedent died, but the whole tax becomes due and must be paid according to the rule just stated.

The testator having provided that his wife should be left in the undisturbed possession of her individual property not identified with his estate,—*Held,* that she was entitled to a balance due her on his books, appearing in an account of her individual estate kept in her individual name.

C. C. GRISWOLD, *Executor.*

W. WATSON, *for Legatee.*

THE SURROGATE.—The testator directed his executor to pay his wife a certain annuity during life, in equal quarterly payments, on the first Mondays of January, April, July and October, such payments to commence immediately after his decease. He died on the fourth day of August, 1856, and it is claimed that the first instalment of the annuity became instantly due on his decease. I think otherwise. The language

of the will calls, in the first instance, for a certain sum annually. Had there been no specific direction, the first payment would have become due at the end of a year, but the provision for quarterly payments anticipates this period; and to make it more certain that the quarterly payments shall fall within the first year, the will requires them to commence immediately after the testator's decease. The quarter days are named, and this excludes the idea of a payment at any other time; the payments are required to be equal, and this excludes the idea of apportionment. I think, therefore, that a full quarter of the annuity became due on the first Monday of October last, and must be paid accordingly. This satisfies with precision the exact language of the will, and in my judgment is conformable with its intent and meaning.

The devise to the testator's widow of the use of his dwelling-house was made subject to the discharge of the taxes by the life tenant. In all cases, taxes due at the time of the death of the deceased person are payable out of his personal estate, and taxes accruing subsequently are chargeable upon the land. There is no rateable division or apportionment, but the entire tax becomes due and must be paid, according to the rule just stated.

The testator directed that his wife should be left in the undisturbed possession of her individual property coming to her by inheritance or otherwise, including all securities standing in her name, " as well as all other property and effects belonging appropriately to herself and not identified with his (my) estate." At the time of his death, there was an account with his wife, in the books of his commercial house, for moneys received from her individual estate, showing a balance in her favor. This clearly comes within the terms of the will, the account itself affording the best possible evidence of property " belonging appropriately" to her, and " not identified with his estate." This method of dealing with her separate property, taken in connection with his testamentary provision, imperatively requires the payment to her, by the executor, of the balance of the account.