## *In re* DETMOLD'S ESTATE.

### (*Supreme Court, General Term, First Department.* March 29, 1889.)

TAXATION—WHO LIABLE FOR TAXES—LIFE-TENANT.

The taxes on land devised in remainder, included in assessment rolls certified by the commissioners of taxes and assessments three days before testator's death, are payable out of the estate by the executors, and should not be charged to the life-tenant.

Appeal from surrogate's court, New York county.

Upon the judicial accounting of Samuel D. Babcock, George De Forest Lord, and Daniel Lord, executors, etc., of Christian E. Detmold, deceased, the surrogate decreed that certain taxes on real estate should be charged to the life-tenants under the will. The opinion of the surrogate may be found in 3 N. Y. Supp. 555. The executors appeal.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Charles E. Miller* and *F. B. Lord,* for appellants. *J. W. Perry,* special guardian, for the infant remainder-men, respondents.

VAN BRUNT, P. J. The testator died in the city of New York on the 2d of July, 1887. His will was shortly thereafter admitted to probate, and the executors duly qualified. By the provisions of his will the decedent, after some bequests, devised, subject to an annuity to his wife, all his estate to his two daughters for life, with remainder to their issue. The remainder-men are infants, and are represented by their special guardian appointed by the surrogate. The executors in the account of their proceedings charged the annual taxes for the year 1887 against the capital or *corpus* of the estate, and hence, in effect, against the parties in remainder. The special guardian objected to this charge on behalf of the remainder-men, claiming that the tax should be borne by the life-tenants, and paid out of the income. A statement of facts was agreed upon, and a hearing before the surrogate had thereon. This statement shows that on the 29th of June, 1887, three days prior to testator's death, the commissioners of taxes and assessments certified the assessment rolls of the real and personal estate of this city for the year 1887, and delivered the same before the first Monday of July to the board of aldermen. The premises 557 and 559 Broadway were assessed on such rolls to the testator as owner at a valuation of $250,000, of which premises he was up to the time of his death the actual owner. The amount of the tax for the year 1887 was imposed at the sum of $5,400. On the hearing before the surrogate, the objection of the special guardian, that the charge by the executors of this annual tax to the capital of the estate was improper, was sustained. The surrogate

held that the tax must be charged against the income, and be borne by the tenants for life. An order was entered in accordance with such decision, and from such order this appeal is taken.

There is no question but that the annual charges and taxes imposed on property must always be borne by the life-tenants upon the theory that each estate must bear its own burden. But upon an examination of the facts in this case it appears that this rule is entirely inapplicable, for the reason that the *corpus* of an estate must bear the burdens of its debts, and at the time of the testator's death he had become personally liable for the payment of this tax entirely, independent of the question as to whether it was or was not a lien upon the real estate. And it is here that we think the learned surrogate has overlooked the fact that the liability of the testator to pay this tax does not depend upon any special statutory provision in respect to the payment of taxes levied against estates of decedents, but rests upon the broad principle that the testator's estate is liable for the payment of his debts. Therefore, if this tax at the time of his death was a liability against him, his estate was bound to pay it, and it could not be charged against the life-tenants. In fact, it appears that the testator did not die until half the year 1887 had passed. The tax was for the whole year, and there does not seem to be any justice in charging the life-tenants with the tax for the whole year when they get only the income for the half, unless we are required to do so on principles the authority of which should not be interfered with. But it seems to us that the question is not open to discussion. In the case of *Rundell* v. *Lakey*, 40 N. Y. 513, it was distinctly held that the owner was legally liable to pay a tax which was in precisely the same condition as the one at bar. In the case cited the action was brought to recover the amount of a certain tax assessed against the defendants and paid by the plaintiff at the request of the defendants under an agreement that they would refund the amount to him in case they "were legally liable to pay it." On September 1, 1860, the defendants sold and conveyed to the plaintiff by deed, with the usual covenants for peaceable and quiet possession, a farm in the town of Manchester, and the plaintiff took possession. The county and state taxes for that year had been assessed to the defendants. The assessment rolls were completed before August 1st. The annual meeting of the supervisors was held in November, when the tax in question was extended upon the rolls, and became a lien upon the real estate. On the 14th of February, 1861, the plaintiff paid the tax upon the agreement stated, and it was held that the vendee could maintain an action against the vendors upon the agreement, and also that there was a personal liability of the defendants for the payment of the tax, and that after the completion and delivery of the assessment roll there was no power to alter or change it. This case established the personal liability of the defendants for the payment of the tax, because they were the owners of the property in question at the time the assessment roll was made out. But it is claimed that this case is no authority in respect to the question in the case at bar, because the controversy was over the rights of vendors and vendees, while in the case under consideration, as between life-tenants and remainder-men, the rights of the respective parties are different.

Our attention is called to the case of *Barlow* v. *Bank*, 63 N. Y. 399, where it was held that there was not a breach of the covenant against incumbrances unless the tax had been confirmed so as to be a lien upon the land prior to the execution of the deed, and that case was distinguished from the case of *Rundell* v. *Lakey*, in that the only point involved and decided was as to there being a breach of the covenant against incumbrances, whereas in the *Case of Rundell* the question was whether the previous owner was legally liable to pay the tax. In the case at bar the assessment rolls had been completed and delivered prior to the death of the testator. There was therefore a personal liability upon the part of the testator to pay the tax because he was the owner

of the property at the time the assessment roll was made out, and, it being a debt, the executors were bound to pay it out of his estate, and could not charge it against any of the devisees; the distinction between the time at which the personal liability to pay the tax accrues and the time at which such tax becomes a lien upon the lands being very apparent.    We think, therefore, that the learned surrogate erred in charging this tax against the life-tenant, but that the executors should have paid the tax; it being a debt for which the testator had become personally liable during his life-time.    The order should be reversed, with $10 costs and disbursements, and the case remitted to the surrogate for further action.    All concur.