HARDIN, P. J., and MARTIN, J., concurred.

Order or judgment, so far as appealed from, affirmed, with costs.

In the Matter of the Petition of MADISON D. SHIPMAN, as the Administrator, etc., to Compel a Judicial Settlement of the Accounts of EMILY C. SHIPMAN, the Deceased Executrix, etc., of AZARIAH B. SHIPMAN, Deceased.

MADISON D. SHIPMAN, as Administrator, etc., of AZARIAH B. SHIPMAN, Deceased, Appellant and Respondent.

In the Matter of the Petition of JACOB A. NOTTINGHAM, as Executor, etc., of EMILY C. SHIPMAN, Deceased, for the Judicial Settlement of the Accounts of EMILY C. SHIPMAN, the Deceased Executrix, etc., of AZARIAH B. SHIPMAN, Deceased.

JACOB A. NOTTINGHAM, as Executor, etc., of EMILY C. SHIPMAN, Deceased, Respondent; MARCIA S. ANDREWS and Another, Respondents and Appellants.

*What proceedings under the Code of Civil Procedure, § 2606, cannot be consolidated — settlement of the accounts of a deceased executrix — an inventory, prima facie evidence — effect of the deposit and withdrawal, by an executrix, of moneys — she will not be charged with a premium on gold — bonds, to be inventoried at actual, not par, value — reasonable funeral expenses — taxes, to be paid by the life tenant — taxes and expenses of a trust must be paid from the income.*

There is no special power given to consolidate a proceeding brought to compel an accounting by the executor of a deceased executor, with a proceeding brought by such executor for a voluntary settlement of the accounts of his testator as executor under section 2606 of the Code of Civil Procedure, although they are both proceedings for the same purpose, but the fact that an order was made consolidating such proceedings is not a sufficient ground for the reversal of a decree, rendered in the consolidated proceedings, when the party appealing was not harmed by the granting of the order of consolidation.

Where, upon the settlement of the accounts of a deceased executrix, by the aid of the inventory made by the executrix and on file, and of other evidence, the true amount of the estate of which the deceased was the executrix as then existing

can be ascertained with reasonable certainty, if the executrix acted in good faith, the severe remedy given where there exists a confusion of goods should not be applied.

The inventory is *prima facie* evidence of the amount of the estate (although it be not shown that the proper notice of the making thereof was given) in a case in which, on the trial, no objection was made to the receipt of the inventory in evidence, and the objection that proper notice was not given was not made until requests were made on the settlement of the case on appeal, and where the inventory was filed in 1869 and the proceedings for the accounting were commenced in 1893.

Where an executrix deposits money in an account in a bank kept by her testator in his lifetime, and continued by her after his death, and thereafter draws out the same, signing the receipt therefor as executrix, presumptively such sum of money is the property of the estate; it will not, however, be charged to a deceased executrix nor the inventory be surcharged in that amount on the render-ing of her account of proceedings, if not mentioned therein, nor in her inventory where the inventory was made and filed prior to the making of such deposit — in the absence of proof that such sum was not an amount resulting from the sale of assets mentioned in the inventory.

When a person receives from another on the day of his death a sum of money in gold, and is thereafter appointed executrix of the deceased, if such sum was not received as a gift, or in the payment of a debt, but to be accounted for, such executrix should be charged with the amount received by her; she should not, however (if the money received by her was gold), be charged with the amount of any premium thereon.

Bonds belonging to an estate should be appraised at their actual value, and not at their par value, and an executrix, although the same are set down in the inventory at their par value, is chargeable with their actual value at the time of the filing of the inventory of the estate.

A reasonable charge for a suitable headstone is a proper disbursement to be allowed to an executrix as a part of the funeral expenses of a testator, but where the value of the real and personal estate of a testator together amounts to about $17,000 an allowance to his executrix of the sum of $2,000 for the con-struction of a "vault and tomb," and the sum of $580 for a cemetery lot, with-out express authority in the will, is too large, and the item of $2,000 should be reduced to the sum of $1,000.

The general rule is that the taxes assessed upon real estate during the existence of a life tenancy must be paid by the life tenant, and to sustain a construction of a will whereby the capital of a trust fund may be impaired by using it in pay-ment of taxes, the will must contain words of the most unmistakable import, pointing unequivocally in that direction.

The general rule is that in case of a bequest of the income of a fund the taxes on the fund and the expenses of the trust must be paid out of the income.

CROSS-APPEALS by Madison D. Shipman, as administrator, etc., of Azariah B. Shipman, deceased, and by Marcia S. Andrews and

another, legatees under the last will and testament of Emily C. Shipman, deceased, from portions of a decree of the Surrogate's Court of the county of Onondaga, entered in the said Surrogate's Court on the 9th day of February, 1894, settling the accounts of Emily C. Shipman, the deceased executrix, etc., of Azariah B. Shipman, deceased.

*Matthew Hale* and *Jerome Egelston*, for the appellant Shipman, administrator, etc.

*C. W. Andrews*, for the respondent Nottingham, executor, etc., and for the appellants Andrews and another.

MERWIN, J.:

On September 15, 1868, Azariah B. Shipman died at Paris, France. He left a last will and testament which bears date March 12, 1868. This was on the 19th of November, 1868, admitted to probate in Onondaga county, where the testator resided, and letters testamentary at that date were issued to Emily C. Shipman, the widow of the deceased and one of the executors named in the will. Afterwards, and on the 6th of February, 1869, an inventory of the personal estate was filed in the surrogate's office. This purports to have been made by two appraisers on the 11th of January, 1869, and was verified by Mrs. Shipman before the surrogate of the county on the day it was filed. The amount of property, as there stated, was $13,669.

By the will, after providing for "debts and funeral expenses," the testator gave legacies to the amount of $300, payable as soon as practicable after his decease, and by the fifth and sixth clauses he gave legacies to the amount of $1,500, payable at the death of his wife, without interest. He then disposed of his medical library and surgical instruments and apparatus. Then came the following provisions :

'*Eighth.* I give, devise and bequeath to my wife, Emily C. Shipman, the one undivided one-half part of all the rest and residue of my real and personal estate of which I may die seized or possessed, to have and to hold the same to her and her heirs for ever.

"*Ninth.* I give, devise and bequeath to my said wife the remaining undivided one-half part of all the rest and residue of my

real and personal estate of which I may die seized or possessed, to have and to hold the same and to receive the income therefrom for and during the term of her natural life, and upon her death I give, devise and bequeath said undivided one-half part as follows," the manner of such disposition being stated, which is not important here except it was to brothers and sisters or their descendants. Two executors were named, and they were directed and empowered to sell and convey any real estate that he owned at his decease, and "meanwhile to pay all taxes and charges thereon." In the last clause there is this statement : " It is my intention that my wife shall receive all the income from my estate during her life, arising as well from the rest and residue bequeathed, as from any sums set apart to pay the legacies provided for in the fifth and sixth items of my will."

Mrs. Shipman died on July 26, 1892, never having had a judicial settlement of her accounts. The other executor named in the will did not qualify. Mrs. Shipman had a separate estate, which, at her death, inventoried $100,000 and upwards. She left a will, which was afterwards duly proved, and letters testamentary issued to Jacob A. Nottingham on the 24th of September, 1892. At the same date Madison D. Shipman was duly appointed administrator with the will annexed of the estate of Azariah B. Shipman. On the 30th of March, 1893, he presented a petition to the Surrogate's Court of Onondaga county praying that Nottingham, as executor, etc., be required to render an account of the proceedings of Emily C. Shipman, as executrix, etc., of Azariah B. Shipman, deceased, and to deliver and pay over whatever was found to belong to said administrator. A citation was duly issued, and, upon its return, Nottingham, as executor, presented his petition for a final judicial settlement of the accounts of Emily C. Shipman as such executrix. Upon this a citation was issued to the proper parties, returnable on the 20th of June, 1893. On the 30th of June, 1893, to which time both matters had been duly adjourned, an order was made that " said matters of accounting be and the same are hereby consolidated." Afterwards Nottingham, as executor, filed an account of the proceedings of Mrs. Shipman as executrix, objections were filed by the administrator with the will annexed, and after a trial the decree was made that is appealed from.

The appellant, the administrator, etc., claims that the order of consolidation was improperly made. The administrator was proceeding under section 2606 of the Code of Civil Procedure. The same section, as amended in 1891, authorized the proceeding of the executor of Mrs. Shipman. There seems to be no special power given to consolidate the two, but they are both proceedings for the same purpose. It is difficult to see how the administrator was harmed by the order. (*Matter of Hodgman*, 31 N. Y. St. Repr. 479.) He had full opportunity to have determined what moneys or property should be turned over to him. He suggests that the whole estate should have been turned over to him, but he hardly claims that the deceased executrix should not be credited with the half of the estate that was absolutely given to her. She is charged in the decree with all the costs and disallowed commissions. The decree is in fact entitled in both matters. We find no good ground for interfering with the order.

The main question in the case relates to the basis on which the accounting should be had. The decree is made on the basis of the inventory, adding thereto such items as upon the facts were considered proper. The claim of the administrator with the will annexed is that the inventory is not *prima facie* evidence of the amount of the estate, because : *First*, it is not shown that the proper notice was given of the time and place of the appraisal, and, *second*, items are shown to have been omitted, intentionally, as the appellant claims, to such an extent as to make the inventory unreliable and in effect fraudulent, and that as the executrix kept no accounts and mingled the estate of her testator with her own, it should be assumed that all the property which she left belonged to the estate of her testator, except such as her representative may be able to show belonged to her individually. In this way it is claimed that the doctrine of confusion of goods (1 Story's Eq. Juris. § 468 ; 1 Perry on Trusts, § 447) should be applied.

The inventory was made January 11, 1869, and verified before the surrogate and filed in the surrogate's office February 6, 1869. No question is made about the proper appointment and qualification of the appraisers. No proof was given that notice of the appraisal was served and posted, as required by the statute. The inventory was offered in evidence by the executor of Mrs. Shipman, and was

received in evidence without objection. No question was raised as to its invalidity until requests were made upon the settlement of the case upon appeal. If it had been raised in time and the defect not then supplied, it might with considerable reason be said that after this lapse of time it would be presumed that the proper notice was given. (See Lawson Presumptive Ev. 60.) The circumstance that for twenty years and upwards, and until after the death of Mrs. Shipman, no question was raised about the inventory, deserves some consideration. (*Thompson* v. *Thompson*, 1 Bradf. 24.)

The surrogate by his decree charges the estate of the executrix with several additional items of assets, but finds that she committed no willful breach of trust, and did no fraudulent or dishonest act, and refuses to find that she intentionally withheld and omitted from the inventory any of the additional items. There are in the case circumstances which tend to support this conclusion of the surro-gate, and we are not prepared to say his conclusion is wrong. Besides, there is evidence in the case that is quite persuasive to the conclusion that the inventory is substantially correct. I refer to the statement or inventory made by the testator in his diary on December 9, 1867. This was evidently a statement of his securities and real estate and included an item for notes and bank accounts. The testator and his wife went to Europe in March, 1868, and upon the letter of credit of the testator there was drawn about $2,500 up to the time of his death. Having this in view, it would seem that the inventory filed did not depart greatly from the situation in fact when it was made.

If, by aid of the inventory as filed and the other evidence in the case, the true amount of the estate as then existing can be ascertained with reasonable certainty, and the testatrix acted in good faith, the severe remedy upon confusion of goods should not be applied.

We are of the opinion that the surrogate did not err in taking the inventory as a basis. That was *prima facie* the amount of the estate. (*Marre* v. *Ginochio*, 2 Bradf. 165; *Matter of Ryalls*, 74 Hun, 205, and cases cited; Code Civ. Proc. § 1832.)

The administrator claims that there are other items that the surrogate should have charged to the executrix. It appears that on

February 1, 1869, Mrs. Shipman deposited in the Syracuse Savings Bank, in an account kept by her husband in his lifetime, and continued by her after his death, the sum of $2,000, which, on the third of March following, she drew out, signing the receipt as executrix. Presumptively this was property of the estate. There was no item of this particular amount and character in the inventory, and, therefore, it is claimed it should be added to it. The argument seems to be that the verification of the inventory by Mrs. Shipman on February 6, 1869, was a statement by her that the estate was then situated as stated in the inventory, and that as it did not include the item of $2,000, it should be added to it. The surrogate disallowed the item on the ground that the inventory being *prima facie* proof of the assets, it could not be found from the evidence that this item was not some portion of the property mentioned in the inventory, or the proceeds thereof. It is to be observed that the inventory was made January 11, 1869, and must speak of the character of the property as it was then. So we think the surrogate did not err in disallowing the item. The same may be said as to divers items deposited by Mrs. Shipman to her credit as executrix in the Onondaga County Savings Bank from October 1, 1869, to June 30, 1874.

It was found by the surrogate that Mrs. Shipman on or about September 15, 1868, received from her husband at Paris, France, £360 sterling, of the value of $1,746, which belonged to her husband and was received by her either as his agent before his death or as part of his estate after his death, and should be charged to her, and he did so charge it in his decree. The administrator claims that the charge was too small in that it did not, as he claims, include the premium then on gold. The appellants' legatees under the will of Mrs. Shipman claim that the evidence does not warrant the finding that the money was the testator's, or that it was received by Mrs. Shipman as agent for her husband or as part of his estate.

The testator on going to Europe in March, 1868, took with him a letter of credit from a banking house in New York, having, as correspondents, John Munroe & Co., in Paris, France, and J. S. Morgan & Co., in London, England. He died at Paris, France, about twilight on September 15, 1868. On the 15th of September, 1868, Mrs. Shipman received by credit with John Munroe & Co., at Paris, £360. This credit was by draft on London. On the 16th

of September, 1868, the account of the testator with J. S. Morgan & Co., in London, was charged with draft for £360, and the letter of credit was surrendered. There is evidence from which it may be inferred that the credit to Mrs. Shipman at Paris was by means of the letter of credit. The money was largely used for funeral expenses and expenses of return home. The circumstances warrant the conclusion that the money was received, not as a gift or in the payment of a debt, but to be accounted for. The conclusion on this subject of the surrogate should not be disturbed. The estate of Mrs. Shipman is allowed credit for the funeral expenses.

It is not found or shown except, perhaps, by inference that Mrs. Shipman received the amount in gold. Assuming that she did, the case of *Kellogg* v. *Sweeney* (46 N. Y. 291) seems to be against the right to add the premium to the recovery. All that was received was money, and the judgment can only be for so much money. (See, also, *Phillips* v. *Speyers*, 49 N. Y. 654; *Swanson* v. *Cooke*, 45 Barb. 574.)

The same rule would apply to the claim as to an item of $225 received in gold and which was charged to the estate of the executrix at the par value.

In the inventory were several bonds, being five-twenties, so called, of date November 16, 1861, to the amount of $1,500, and of date July 1, 1865, to the amount of $4,000. These are appraised in the inventory at par value and so charged in the decree. It was admitted at the trial that these bonds at the time of filing the inventory were at a premium. We see no good reason why they should not have been appraised at their actual value at the time. They were then, according to the evidence, at a premium of seven per cent. This would add to the inventory the sum of $385.

The surrogate allowed as part of the funeral expenses the sum of $2,000 for the construction of a "vault and tomb," and the sum of $580 for a cemetery lot. A reasonable charge for a suitable head-stone is proper to be allowed as part of the funeral expenses. (Code Civ. Proc. § 2749 ; *Owens* v. *Bloomer*, 14 Hun, 296.) The monument, if it be called that, which is allowed for here, was not of the ordinary character. The amount of the real and personal estate altogether was about $17,000. We find no sufficient reason in the facts or in law for the allowance of so large a sum for the purposes

stated without express authority in the will. The item of $2,000 should be reduced to the sum of $1,000.

The testator, at the time of his death, was the owner of a house and lot in Syracuse. This was sold in 1881 by the executrix under the power given her by the will. In the meantime she paid for taxes on the premises the sum of $821.44. This the surrogate refused to allow to the estate of the executrix on the ground "that the ordinary rule should apply that taxes assessed during the existence of a life tenancy must be paid by the life tenant, and although the will directs the executrix to pay the taxes, the fair construction of the will in that regard is that she should pay them out of the income." The appellants, the legatee, etc., claim that this ruling was erroneous. The general rule is admitted to be as stated by the surrogate, but it is argued that this case is an exception by reason of the clause in the will that directs the executors "meanwhile to pay all taxes and charges thereon." In *Matter of Albertson* (113 N. Y. 434) it was held that to sustain a construction of a will, whereby the capital of a trust fund may be impaired by using it in payment of taxes and of interest on mortgages and in maintaining the realty used by the life tenant, it must contain words of the most unmistakable import pointing unequivocally in that direction. In that case the words to "pay out of my estate" were held not to be sufficient to relieve the income from the charge. The force of this decision as applicable here in favor of the ruling of the surrogate is sought to be met by the provision of the eleventh or last clause of the will, where it is stated to be the intention of the testator that his wife "shall receive all the income from my estate during her life, arising as well from the rest and residue bequeathed, as from any sums set apart to pay the legacies provided for in the fifth and sixth items of my will." The claim is that the expression "all the income" shows an intention to cast the burden of the taxes in question on the capital of the estate. Very clearly the object of the eleventh clause was to make clear the proposition that the testator's wife should have the income on the fund to be set apart for the payment of legacies that were not to be paid until her death. It can hardly be construed to mean that the testator by it indicated an intention that his wife should have the gross income of the estate. The general rule is that in case of a bequest of the income of a fund, the taxes on the fund and the

expenses of the trust must be paid out of the income. (*Whitson* v. *Whitson*, 53 N. Y. 481.) The ruling of the surrogate should not, we think, be disturbed.

There are no other questions that need be here discussed. It follows that the inventory account should be increased in the sum of $385 and interest from July 26, 1892, the date of Mrs. Shipman's death, and the amount allowed for funeral expenses should be decreased in the sum of $1,000, and the decree should be modified accordingly. In other respects the decree should be affirmed.

MARTIN, J., concurred.

HARDIN, P. J.:

Upon the force of *Owens* v. *Bloomer* (14 Hun, 296) I assent to the modification as to the "vault and tomb;" as to the other portion of the opinion I give my assent.

Decree modified as stated in the opinion, and as modified affirmed, without costs of the appeals to either party.