(69 Misc. Rep. 457.)

EQUITABLE LIFE ASSURANCE SOCIETY OF UNITED STATES v. TOPLITZ et al.

(Supreme Court, Special Term, New York County. November, 1910.)

1. TAXATION (§ 508*)—LIENS—UNCONFIRMED TAXES.
   Unconfirmed taxes do not constitute a lien against realty.
   [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 508.*]

2. MORTGAGES (§ 535*)—FORECLOSURE—SALE BY REFEREE.
   A referee appointed to sell property under a judgment in foreclosure should sell the property, pay off liens and incumbrances, and convey it free of incumbrances.
   [Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 535.*]

3. MORTGAGES (§ 535*)—FORECLOSURE SALE—APPORTIONMENT OF UNCONFIRMED TAXES.
   The contract of sale between a referee appointed to sell realty under a foreclosure judgment and the purchaser thereof provided that all taxes and assessments which at the time of sale were liens or incumbrances upon the property should be allowed by the referee out of the purchase money, provided that the purchaser should, previous to delivery of the deed, produce to the referee proof of such liens and duplicate receipts for the payment thereof; and a notice of sale published as required by law recited that the approximate amount of the taxes, assessments, etc., or other liens to be allowed to the purchaser out of the purchase money or paid by the referee was a stated amount, concededly not including taxes for 1910, which had not been confirmed at the time of sale. Held, that the purchaser was entitled only to an allowance for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

such taxes as were a lien or incumbrance on the property at the time of sale, and not for any part of the tax of 1910 confirmed after such sale.
[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 535.*]

Action by the Equitable Life Assurance Society of the United States against Harry L. Toplitz and others. Application by referee appointed to sell mortgaged premises for instructions. Instructions given.

Norton & Gregory, for petitioner.
Xenophon P. Huddy, for Hortense B. Fischer, the purchaser.
Holm, Whitlock & Scarff, for Hudson Trust Co.

GUY, J.   This action was brought to foreclose a first mortgage upon premises in East Eighty-Sixth street, borough of Manhattan; and the premises in question were sold pursuant to judgment in foreclosure on September 15, 1910. The contract of sale entered into between the referee and the purchaser contained the following provision:

"All taxes, assessments and water rates which at the time of sale are liens or incumbrances upon said premises will be allowed by the referee out of the purchase money, provided the purchaser shall, previous to the delivery of the deed, produce to the referee proofs of such liens and duplicate receipts for the payment thereof."

The notice of sale duly published, as required by law, contained the following provision:

"The approximate amount of the taxes, assessments and water rates or other liens which are to be allowed to the purchaser out of the purchase money, or paid by the referee, is $3,859.98."

It is conceded that this approximate amount did not include the taxes for the year 1910, which, at the time of the sale, had not been confirmed. Upon the day of the closing of title the purchaser after being allowed, as provided by the terms of sale, the amount of taxes, assessments, and water rates which had been paid by her, and which constituted liens or incumbrances against the property before the date of sale, demanded that the referee in addition should allow and pay to her, out of the surplus moneys remaining in his hands after the payment of all such liens and incumbrances, the sum of $1,796.55, as the proportionate amount of the taxes assessed against the premises in question to and including the 15th day of September, 1910. The referee applied to this court for instruction as to whether this payment should be allowed. An order was subsequently entered directing the referee to pay the amount of the judgment and expenses of sale; the question of the apportionment of said taxes for 1910 and the payment to the purchaser on account thereof being reserved for further consideration. It appears also that the Hudson Trust Company, one of the defendants, holds a subsequent mortgage upon said premises for $25,000, which is past due, and the payment of which, with interest, would more than consume the surplus in the hands of the referee.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Under the terms of her contract with the referee, as embodied in the terms of sale, the purchaser would be entitled to an allowance only of such taxes as constituted a lien or incumbrance against the property on the date of sale. The contract is not indefinite or ambiguous on this point; but the taxes and assessments or other incumbrances which are to be paid by the seller, the referee, or allowed to the purchaser, upon the closing of title, are clearly and definitely stated. The purchaser, however, claims that as, upon the confirmation of the tax, it would relate back to the time of the entering of the property on the assessment roll, i. e., January 9, 1910, and become a personal charge or debt against the mortgagor, as the owner of the property on that date, and as, under the terms of the mortgage, the mortgagee was authorized to pay all taxes against the property and to recover back the same from the mortgagor, the purchaser was subrogated in that respect to all rights of the mortgagee under the mortgage, and is therefore entitled to pay the tax of 1910, when due, and receive from the referee the proportionate amount thereof up to the date of sale. The difficulty with this fanciful theory is that the purchaser did not contract to purchase the mortgage and all rights of the mortgagee thereunder, but did contract to purchase the property itself, free and clear of all liens and incumbrances; and the seller was not the mortgagor, but an officer of the court appointed to sell the property under foreclosure by reason of the mortgagor's default in payment. What the individual liability of the mortgagor as the owner of the property at the time of the making of the assessment roll might be, or whether the purchaser upon payment of any taxes confirmed subsequent to the sale would have any right of recovery on an apportionment of the taxes, as against the owner of record at the time of the entering of the property upon the assessment roll, is not material to this inquiry. The referee was not appointed, nor was it any part of his duty, to discharge personal liabilities of the mortgagor, except as set forth in the judgment. His duty was, under the forms prescribed by law, to sell the property, pay off existing liens and incumbrances, and convey the property free and clear of all incumbrances to the purchaser. When the referee performed this duty and complied fully with the terms of sale, his obligation ended, and the purchaser under her contract is not entitled to make any further demand upon him. That unconfirmed taxes do not constitute any lien against real property has been established by numerous authorities, so that the point seems beyond controversy.

In Coudert v. Huerstel, 60 App. Div. 83, 69 N. Y. Supp. 778, the court, in passing upon this question, said:

"At the time that this notice of sale was prepared, therefore, and at the time of the actual sale of the premises, the taxes for the year 1900 were not payable, nor was the amount of the tax ascertained so that it could be allowed by the referee as a lien upon the property. This notice of sale, therefore, must have referred to taxes that had accrued and become a lien upon the premises prior to the time of the notice of sale, and no purchaser could have been actually misled into supposing that a tax thereafter to be ascertained was to be deducted and paid by the referee."

In Lathers v. Keogh, 109 N. Y. 584, 17 N. E. 133, the court passing upon the same question said:

"That the property was the subject of taxation does not control the question. Until the amount of the tax is ascertained and determined, no lien or incumbrance exists by reason thereof, and we think that the proper construction of this covenant merely calls for the freedom of the property, at the time of conveyance, from what can be considered an incumbrance upon the property. * * * We do not think, therefore, that an assessment or a tax exists as an incumbrance, or as a charge upon lands in the roll, within the meaning of a covenant in a deed against charges, taxes, assessments, and incumbrances, until it has been confirmed and the amount thereof has been determined in the methods prescribed."

And in a preceding part of the opinion the court said:

"Until these requirements of the law have been fulfilled the tax is not due or payable, and no lien attaches to the property, nor can any legal charge for any tax be said to rest upon it."

Again in Barlow v. St. Nicholas Nat. Bank, 63 N. Y. 399, 20 Am. Rep. 547, the court has said:

"If the plaintiff had brought his action the day after he took his deed, could he have maintained it? I think not. The answer would have been perfect that the entry of the land in the assessment roll constituted no incumbrance."

In the more recent case of Buckhout v. City of New York, 176 N. Y. 363, 68 N. E. 659, where the city had acquired title to plaintiff's property by condemnation, title having vested in the city by virtue of a resolution of the board of estimate on July 6, 1897, and the report of the commissioners having been confirmed December 23, 1897, awarding plaintiff the value of his land as of the time of such vesting of title, and the city having claimed the right to deduct from the amount of the award the taxes for 1897, which became due and payable in October, 1897, the court in rejecting the city's claim said:

"After the 6th of July, 1897, when the city took the property as its own, it could not lawfully fix the amount of the tax or extend it to the column opposite the valuation, or take any step to convert the assessment or valuation previously made into a complete tax, definite in amount and capable of enforcement. Taxation cannot create a debt until there is a tax fixed in amount and perfected in all respects. It is not enough to lay the foundation, but the structure must be built. There cannot be a complete tax laid upon real estate until it is so perfected as to become a lien, because until then the amount cannot be known."

In Burr v. Palmer, 53 App. Div. 358, 65 N. Y. Supp. 1056, the learned Appellate Division in confirming this doctrine have said:

"Emphasis is given to this view by the suggestion that if for any reason the computation should never be carried out there would be no authority for the collection of the taxes on any particular parcel by the receiver of taxes."

The purchaser, however, urges that, while the terms of sale are silent as to unconfirmed taxes, they must be construed in the light of existing law, and invokes in support of her claim chapter 542, Laws of 1875, now embodied in section 2720 of the Code of Civil Procedure, which provides that:

"All rents reserved on any lease made after June seven, eighteen hundred and seventy-five, and all annuities, dividends and other payments of every

description made payable or becoming due at fixed periods under any instrument executed after such date * * * shall be apportioned * * * according to the time which shall have elapsed from the commencement or last period of payment thereof."

The omission of all reference to taxes and other charges of like character against real estate is significant. The purchaser herein cites various English authorities in support of her contention that unconfirmed taxes which, when confirmed, would be a charge against the property, should be apportioned; but the English statute with which the authorities so cited deal differs in very material respects from our statute, and the authorities cited throw little light upon the question involved herein. The purchaser's contention that in this instance the mortgage constitutes the written instrument within the meaning of section 2720 is not tenable. The charge against the property which results from the confirmation of the tax does not arise by reason of any provision in the mortgage, but results from the exercise of the taxing power of the government. It seems clear, therefore: First, that section 2720 of the Code of Civil Procedure does not provide for an apportionment of unconfirmed taxes as between the seller and the purchaser of real property, and the statute therefore cannot be deemed to have in any way modified the terms of sale entered into herein between the purchaser and the referee. Second, that no duty rests upon the referee to discharge the personal obligation of the mortgagor, if any such there be, to reimburse the purchaser for taxes which may have become due subsequent to the date of sale. Third, that the purchaser having, by the terms of sale, entered into an express contract of purchase with the referee, and such contract having been fully complied with by the referee, and, upon payment of the purchase price to the referee, the purchaser having received a deed of the property in question free and clear of all incumbrances, the purchaser is not entitled to make any further claim or demand upon the referee.

The referee is therefore advised to refuse to comply with the demand made upon him by the purchaser of the property to allow her any part of the tax of 1910, which was confirmed after the date of sale.

Ordered accordingly.