In the Matter of the Judicial Settlement of the Estate of WILLIAM H. SCHULZ, Deceased.

Surrogate's Court, Monroe County, November 12, 1928.

*Mann, Strang, Bodine & Wright* [*Geo. F. Bodine* of counsel], for the executors.

*Herbert Leary*, for executor of life tenant and also as special guardian.

FEELY, S. By his last will, testator, after giving a legacy of $500, and another of $100 out of income, directed his executor " to pay the balance of my said income to my wife, Caroline D. Schulz, during the period of her natural life, with the proviso that if said

allowance to my wife out of my said income is not sufficient for her support, I direct my said Executor to pay to my said wife so much of the principal of my estate as may be necessary for the reasonable support of my said wife. This provision to my said wife is made in lieu of dower."

From the death of the testator in 1916, and by virtue of the foregoing provisions of his last will, the net income from certain real estate was enjoyed by his widow until her death on the 15th of April, 1928 — that is, on the fifteenth day after the city tax for the ordinary municipal purposes of the whole calendar year 1928 had become as a matter of charter law a lien upon said real estate to wit, on the first day of April, although the tax was not payable until May first following. The widow's executrix now asks that said tax be apportioned according to the part of the year that she lived. Her husband's estate paid this tax in June and now seeks to deduct the whole of it from moneys going on this settlement to the estate of the widow.

In regard to apportionment of a current tax, as between a life tenant and the remainderman, at the death of the former, no New York case, exactly in point, has come to the attention of this court; but in two neighboring States opposing views have been taken. Pennsylvania recognized the right to such apportionment; whereas Massachusetts denied it, as did also Kentucky. In reading the New York cases, cited below, on somewhat similar matters, several points of difference should be borne in mind, viz., that this question does not lie between the State and the taxpayer, which is the aspect that seems to have been decisive in Massachusetts; but the question is between two citizens, neither of whom dispute the right of the State to the tax, and both of whom are alive. The case of *Matter of Corbin* (101 App. Div. 25, 28) is of this class.

In the case at bar the question arises between the estate of the deceased legatee of income for life, with the right to invade the principal, and the surviving remainderman. The estate of this legatee is asked to pay for a period that extends beyond the natural term of the legatee's life, and during which the benefits, so paid for, inure to the remainderman after the payer's death. Moreover, had the tax been laid for some permanent improvement to said real estate, there can be no doubt that a life tenant, in his lifetime, could have successfully claimed an apportionment, according to the circumstances of the case and the respective interests of the parties in the property, even though the will carving out the life estate contained no specific directions as to the payment of taxes. (*Thomas v. Evans*, 105 N. Y. 601; *Peck v. Sherwood*, 56 id. 615.) Where

the will directs the life tenant to pay the current taxes, "there is no ratable division or apportionment." (*Griswold* v. *Griswold*, 4 Bradf. 216.) Such a direction appears in *Deraismes* v. *Deraismes* (72 N. Y. 154). No such direction appears in the will of the testator now in hand. In its authorization of an invasion of principal for the widow's support, this will contains a much more liberal provision than a bare life estate; and by reason of that liberality it includes, by implication of law, even her reasonable funeral expenses. Neither this legatee, nor her estate, then, can be regarded as if she were a mere life tenant of use only.

It has also been held (*Gunning* v. *Carman*, 3 Redf. 69) that where the trustee, after the death of the life tenant, had paid, with interest, an assessment for a permanent improvement made during the latter's lifetime, only the interest for the time which elapsed before his death should be charged to his estate, and the balance of interest and principal to the remainderman.

Saying that a different rule might apply if the case were one of a permanent improvement, the court in *Cairns* v. *Chabert* (1839, 3 Edw. Ch. 312) held that a tenant for life is bound to keep down ordinary charges for taxes and repairs out of the rents and income, and on her failure to do so within a set time, the rents would be sequestered to pay the two years' taxes then in arrears.

"The general rule undoubtedly is that taxes and carrying charges on real estate held by trustees for a life beneficiary are to be paid out of the income of the trust estate, and are not properly chargeable to capital account, unless the will of the testator contains unequivocal directions to the contrary. * * * This rule of construction * * * yields when opposed to the plain intention of the testator." (*Spencer* v. *Spencer*, 219 N. Y. 459.)

Where the improvement is permanent it will inure, after the death of the life tenant, to the benefit of the remainderman; and an equity of apportionment arises in favor of the life tenant during his lifetime. In the case at bar the life tenant's estate is asked to pay for the support of government after the tenant's death and during a period which only the remainderman can enjoy. This unpaid-for benefit to the latter is susceptible of mathematical apportionment; whereas repairs, in a sense, inure to the benefit of the remainderman where they exist after the life tenant's death, but are difficult both to appraise and to apportion.

Is the analogy recognized by the courts? Massachusetts ignored it. In *Holmes* v. *Taber* (1864, 91 Mass. 246) the annual State, county and town tax for the year 1860 was assessed against the trust property, which was personal property. The executors and trus-

tees claimed the right to deduct it from the income. DEWEY, J., wrote:

" The ground of objection to this claim of the executor is, that [the life tenant], who enjoyed the income and use of the fund thus taxed, died on the 22d day of May 1860, and it is contended that, as this was a tax for the entire year following May 1st, 1860, those who succeed to the income and use of the property ought to bear a portion of the tax. But this position is, we think, untenable. The period of time fixed in reference to ownership as to taxation is the 1st of May in each year. The liability of an individual to be taxed for any specific property is decided by the relation he bears to it at that precise day; and whether he may have become the owner on the day previous, or ceased to be such owner the day succeeding, is wholly immaterial.

" This tax being assessed upon the property as it existed on the 1st of May, if it was a charge upon [the life tenant], as the party for whose use and benefit the property was held on that day, the subsequent event of her death on the 22d day of May did not discharge that liability. Consequently the income of [the life tenant], who it is admitted was the person then enjoying the estate, and for whose benefit the estate was held by the executor, is properly chargeable with the whole of it.

" We see nothing in the Act * * * providing for apportionment of an annuity or income where a person dies within the year, that can affect the question of this tax, and upon whose estate or income it is chargeable."

It was held in Kentucky (1901, *Brodie* v. *Parsons*, 23 Ky. L. 831) that taxes which became a lien on the land before the life tenant's death must be paid by his representative, although they were not payable until after his death. The appellate court there was obliged to assume that the assessment for sidewalks — which would be apportioned in New York (*Peck* v. *Sherwood*, 56 N. Y. 615) — had properly been held below to be of the same character as the current, annual taxes that were also in question. In support of this ruling, the court cites cases, under the general rule, holding the life tenant must pay current taxes; but the question there arose in the lifetime of the tenant, who, presumably, had enjoyed the whole benefit thus paid for. Then it is argued that " The remainderman is entitled to receive the property free of all charges which the law cast upon the life tenant; for otherwise he would take the property with a burden." In this statement the equities of the case are not considered. The court continues: " and the life tenant not being liable for any taxes levied before the death of the testator * * * would be governed by a different rule at the

close of the tenancy from that applied at the beginning." The situation at the beginning is quite different from that at the close. A testator who is not a life tenant, but an owner carving the life estate out of the property going at once by gift to both the tenant and the remainderman, stands in no such relation to his said legatees as does the life tenant to the remainderman at the death of the former. Testator in *Matter of Babcock* (115 N. Y. 450) was not a life tenant; and it is not decisive in the case at bar that there his estate was held liable for a current annual tax that had been assessed against him in his lifetime. The estate of such an owner must still pay off a vendor's lien if he devise his rights under the contract; and it is only by statute that the devisee is now obliged to discharge a mortgage on the land devised to him. He cannot make a gift with property that should go to pay his taxes and debts.

The *Deraismes Case* (*supra*) lay between a living life tenant and her deceased husband's estate, he not having been a life tenant. So, in *Seabury* v. *Bowen* (1855, 3 Bradf. 207) there is, the additional distinction that it was an assessment for a permanent improvement which was there placed wholly to the charge of the estate of the testatrix, having been confirmed before her death; and also in that case there was no equity arising out of the relation between the parties, because the testatrix there was not a life tenant, but the owner.

Instead of emphasizing the undisputed liability to the State, the Pennsylvania rule, assuming a tax collectible by the State in any event, looks more to the equities existing between the two private parties in interest in the property taxed. So, in *Crump's Estate* (2 Penn. Dist. 478; 13 Penn. Co. 286) it was held that upon the death of the life tenant the taxes for the current year should be apportioned between him and the remainderman according to the respective periods of their enjoyment; and in *Fest's Estate* (1891, 28 Wkly. N. C. Penn. 415) the court ruled that if they were paid in advance by the life tenant, his estate may recover the amount due from such apportionment. "The effect of the early payment of the taxes, water rents, and State tax is to throw the entire burden of their amount for the whole year on the life tenant, who enjoyed the income for only about one-fifth of that period. This is inequitable." (*Fest's Estate, supra.*)

Upon the death of a life tenant mid the course of a fiscal period, there is a manifest equity in apportioning both the burdens and the benefits. The only reason why we have had since 1875 a statute requiring the benefits to be apportioned (Surrogate's Court Act, § 204), was to abrogate the prior inequitable rule of the common law to the effect that neither courts of law nor equity then would recog_

nize any apportionment of annuities in respect of time; and that if the annuitant died before, or even on the day of payment, his representatives could not claim any portion of the annuity for the current year. (*Kearney* v. *Cruikshank*, [1889] 117 N. Y. 95.) The statute was expressly non-retroactive; and the will in the case cited took effect in 1851. The claim was for the proportionate part of the annuity from July 5, 1885, the date of the last payment, to June 7, 1886, the date of the death of the annuitant. The court said: " We are not at liberty to decide the question in this case upon our notions of natural equity and justice, provided the settled rule of law fixes the rights of the respective parties, and determines the question presented." The court then pointed out that the common-law rule above mentioned had not been abrogated at the date the will took effect, and refused an apportionment of the benefit. I have been unable to find any common-law rule against the apportionment, at the termination by death, of the burdens then incident to a life estate, as between the life tenant and the remainderman. Wherever our courts have found the remainderman unjustly receiving a definite advantage at the expense of the deceased life tenant, they have sustained the equity of an apportionment or rebate; at least, they have always done so in cases of taxes for permanent improvements; and have never, in so far as I know, clearly refused to do so in the case of assessments for current fiscal needs.

. The enactment of our statute was in step with the more liberal policy that had been adopted not only in England but also in many of our States. In connection with a discussion of the exceptions to the rule that the common law itself came to recognize, it has been said: " Moreover the inequity and arbitrariness of the general rule has been so generally conceded that modern legislative and judicial decisions have steadily tended to narrow the rule and enlarge the exceptions, so that it may be safely stated that the trend of judicial opinion is now in favor of applying the equitable principle of apportionment to any case where the annuity is made for the purpose of maintenance and support." (2 R. C. L. 13.)

" It is not easy to see why upon the same equitable principle, as between the estate of a widow, tenant for life, and those entitled in remainder under the will of her husband, charges upon the estate should not be shared in like manner." (*Fest's Estate, supra.*)

In the absence, therefore, of any binding precedent in this State, this court feels free to follow the ruling which makes the equities of the matter decisive, especially in view of the liberality of this testator's intention.

Let the decree to be entered herein provide, among other things,

for an apportionment of the tax in question in the proportion that the calendar year bears to that portion of it which preceded the time of the widow's death. As no interest penalty is added to the tax until after the first of June, the apportionment will be upon the amount of the tax as billed in May, without interest penalty, but upon the face of said tax, less the executor's commissions thereon.