JOHN HAGAN *et al.*

*v.*

GEORGE W. VARNEY *et al.*

*Filed at Springfield October 27, 1893.*

1. TRUST—*how created.* No particular form of words is necessary to create a trust by deed. Whenever an intention to create a trust can be fairly collected from the language of the instrument and the terms employed, such intention will be supported.

2. SAME—*deed held to create trust.* A deed conveying to the grantee and her heirs the entire legal title to land, recited as a consideration the sum of one dollar and the faithful performance of the trusts therein mentioned, and in the *habendum* clause, in which the trusts referred to in the premises of the deed were fully set forth, it was provided that the grantee and her heirs were to have and to hold the land "in trust for the following purposes," etc., and among the trusts and purposes was the following: "Upon the further trust to convey said property in fee simple, by good and sufficient deed, to such children, as aforesaid, (that is, the issue of the grantee's marriage with her husband,) upon the death of the second party and her husband :" *Held,* that such deed created a clear and manifest trust, of which the grantee's children were to become the beneficiaries after the death of both parents.

3. SAME—*whether impossible to execute same.* Where a deed made to a grantee in trust for her children requires the grantee, on her death and that of her husband, to convey the land therein named to her children by her husband, the trust is not such as to be impossible of execution. Such trust may be executed by the trustee and her husband in their lifetime making a deed to take effect upon their death.

4. SAME—*legal title—when it passes to beneficiaries.* Where a conveyance of land is made to a married woman and her heirs, in trust for the benefit of the grantee and her husband during their respective lives, and at their death to be conveyed to the children of the grantee and her husband in fee, the legal title will not be vested in the grantee alone, but in her and her heirs, and upon her prior death the legal title will pass, by descent, to her heirs, for the use and benefit of the husband, until his death, when the legal title is to go to the children.

5. SAME—*purchaser from trustee takes land subject to trust.* Where land is conveyed to a married woman for the use of her and her husband during their natural lives, and at their death to her children, and the deed is duly recorded, a grantee of the husband and wife will take the property burdened with the trust in favor of the children, and

on the death of the husband and wife the children will have the right to a conveyance from the purchaser. In such case the purchaser will not, as against the children, be entitled to the rights of a *bona fide* purchaser, although he may not have had actual notice of the trust.

6. In such case, the purchaser from the trustee will not have the right to recover of the heirs of the trustee, the holders of the equitable title, the amount paid by him to satisfy a mortgage given by the trustee and her husband for money expended by them in improving the property, nor the amount paid to redeem the same from a sale for taxes.

7. SUBROGATION—*to rights of grantor of land.* Where the holder of the legal title to land held in trust for her children, conveys the trust property by warranty deed made by her and her husband, the grantee will be entitled to be subrogated to whatever rights or equities his grantors may have against their children, the beneficiaries under the trust.

8. LIFE TENANT—*duty to pay taxes.* The rule is well settled that the burden of paying current taxes is upon the life tenant, rather than upon the remainder-man; and the life tenant can not, by paying taxes, or by redeeming from tax sales when he has allowed the land to go to sale, create a claim which he can enforce against the remainder-man.

9. SAME—*right to recover for improvements.* A life tenant, by placing permanent improvements on the land, however much they may enhance the value of the estate, can not create any charge for the moneys thus expended, against the remainder-man. Such improvements must be deemed to have been made by the life tenant for his own benefit and enjoyment during the pendency of his own estate, and upon the termination of the life estate, they being a part of the realty, pass as such to the remainder-man, and he takes them without any liability to recompense the life tenant for his expenditures.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

This was a bill in chancery, brought by George W. Varney and five others, children of Lydia M. Varney and Bowman Varney, her husband, against John Hagan and Amelia Hagan, his wife, to assert the equitable title of the complainants to a certain tract of land in Champaign county, and to compel a conveyance of the same from the defendants to them. The facts disclosed by the pleadings and proofs are, in substance, these: On the 25th day of February, 1868, Lucy J. Varney, the step-mother of Bowman Varney, being the owner in fee

of the land in question, executed and delivered to Lydia M. Varney the following deed conveying the same:

"This indenture, made this twenty-fifth day of February, A. D. 1868, by and between Lucy J. Varney, party of the first part, and Lydia M. Varney, party of the second part:

"Witnesseth, that the said party of the first part, for and in consideration of the sum of one dollar to her in hand paid, and that in faithful performance of the trusts hereinafter mentioned, does hereby grant, bargain, sell and convey to the said party of the second part, her heirs and assigns, all the following described lots, pieces or parcels of land situate in the county of Champaign and State of Illinois, to-wit: The north-east quarter of the south-east quarter, and the east half of the south-east quarter of the south-east quarter, of section number thirty-two (32), in township number nineteen (19), north, and range eight (8), east, containing about sixty acres, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and the reversion, reversions, remainder, remainders, rents, issues and profits thereof, and all the estate, right, title, interest, claim and demand whatsoever of the said party of the first part, either in law or in equity, of, in or to the said premises, tenements, hereditaments and appurtenances, to have and to hold the same unto the party of the second part and her heirs in trust, for the following purposes, to-wit:

"*First*—During her lifetime to have and hold said premises entirely to and for her own sole and separate use and benefit, and during that time to receive the rents, issues and profits thereof to her own sole and separate use, upon condition, however, that she shall, during that time, suitably feed, lodge, clothe and educate all children which have been or may hereafter be born of her by virtue of her marriage with Bowman Varney, during the minority of each child.

"*Second*—In case of the death of said party of the second part leaving her said husband, Bowman Varney, her surviving,

then the said premises shall be held to his use and benefit,. and he occupying the same or receiving the rents, issues and profits thereof, during his natural life, upon condition, however, that he shall feed, lodge, clothe and educate such children, as aforesaid, in the manner aforesaid, and upon his default to do so, then to be held during his, said Bowman's, natural life, for the use and benefit of said children.

"*Third*—Upon the further trust, to convey said property in, fee simple, by good and sufficient deed, to such children, as aforesaid, their heirs or assigns, upon the death of both said party of the second part and her said husband, Bowman.

"*Fourth*—Upon the further trust, to convey said property in fee simple to such children, as aforesaid, their heirs or assigns, upon the said party of the second part marrying again.

"And the said party of the first part, for herself, her heirs, executors and administrators, covenants and agrees, to and with said party of the second part, and her heirs and assigns,. that she is lawfully seized of said premises in fee simple, and has right and full power to grant, bargain and sell the same in manner and form as aforesaid; that the same are clear from all incumbrances done or suffered by her, and she will, and her heirs, executors and administrators shall, forever warrant and defend the same against the lawful claims of all persons claiming or to claim the whole or any part thereof,. by, through or under her. And the said party of the second part, in consideration of the premises, hereby accepts and takes upon herself the performance of the above mentioned trusts, and for herself and her heirs, executors and administrators, covenants with said party of the first part that she and they shall and will faithfully keep and perform the above mentioned trusts and conditions to be by them performed:

"In testimony hereof the said parties have hereunto interchangeably set their hands and seals this day and year first above written.          LUCY J. VARNEY,     [Seal.]

LYDIA M. VARNEY.    [Seal.]"

On the 28th day of March, 1868, this deed was duly re-corded in the office of the recorder of Champaign county. Shortly after its execution, Lydia M. Varney and her husband moved upon the land conveyed and made it their residence and homestead. While in possession, they placed upon the land certain buildings and other improvements, and subse-quently, in a mechanic's lien proceeding, to which Lydia M. and Bowman Varney were parties, but to which their children, the present complainants, were not parties, a decree was ren-dered establishing a lien against the land, and ordering it to be sold for the satisfaction thereof. Under that decree the land was sold, and a master's deed was afterwards executed to the petitioning creditors. To obtain a reconveyance of the land, Lydia M. Varney and husband negotiated and obtained a loan of money, and to secure the same, executed a mortgage on the land. When that mortgage matured, they paid it by ob-taining another loan, and executing a new mortgage therefor, and that mortgage was paid after its maturity, by obtaining a further loan from still other parties, and the execution of a third mortgage on the land. This last mortgage was for $900.

Sometime in March, 1885, the defendants, John Hagan and wife, having a little money and desiring to purchase a small piece of land, learned that the land in question was for sale. They thereupon called upon Lydia M. Varney and her hus-band with view of purchasing it, and negotiations were entered upon which resulted in an agreement by Lydia Varney and husband to sell the land to the defendants, they agreeing to pay therefor the money they then had, being about $1500, and to assume the payment of the $900 mortgage. The vend-ors were to furnish an abstract of title, which they did, the deed from Lucy J. Varney to Lydia M. Varney being described therein simply as a warranty deed, executed in consideration of $1, no reference being made to any of the conditions therein contained or the trusts therein declared. The abstract was submitted to an examiner, who reported that the title thereby

shown in Lydia M. Varney was a perfect title in fee simple,. and thereupon the purchase was consummated by a convey-. ance of the land from Lydia M. Varney and husband to Amelia and John Hagan by deed with full covenants of warranty,. and by the payment by the purchasers to the vendors of the cash payment and the assumption of the mortgage, which the purchasers afterward paid and satisfied. The price thus paid seems to have been at that time the fair cash value of the land.

Lydia M. Varney died June 6, 1888, and Bowman Varney died in March, 1891. On the 23d day of April, 1891, the present bill was filed, two of the complainants then being adults, and the others being still minors. The case was afterwards heard on pleadings and proofs, and upon such hearing the court found and decreed, that the deed from Lucy J. Varney to Lydia M. Varney conveyed the lands in question to the latter in trust, among other contingent uses, upon the death of Lydia M. Varney and her husband, to convey the same in fee simple to the children which were or might be born of their marriage, and that Lydia M. Varney and her husband having both died, the complainants are in equity the owners of the land in fee, and entitled to the possession thereof; that the deed from Lydia M. Varney and husband to the defendants was subject to the rights and interests of the complainants in the land, and that the defendants have no equitable right or interest therein as against the complainants, but took the title subject to the trust to convey the land to the complainants,. on the death of Lydia M. and Bowman Varney. It was thereupon adjudged and decreed, that the defendants convey to the complainants by quit-claim deed, all their right, title and interest in the land, and surrender to the complainants possession thereof by a day named, and in default of such conveyance, that the master execute the deed in their behalf, the defendants to pay the costs of suit. To reverse this decree the defendants now bring the record to this court by writ of, error.

Mr. J. L. Ray, and Mr. J. S. Wolfe, for the plaintiffs in error:

The deed from Lucy J. Varney, under which the defendants in error claim title to the land, was not a trust, but was in law an absolute conveyance of the title to Lydia M. Varney. *Gallaher* v. *Herbert,* 117 Ill. 160; *Board of Education* v. *Baptist Church,* 63 id. 206; *Cooper* v. *Cooper,* 76 id. 57; 3 Washburn on Real Prop. 439.

The supposed trusts in said deed contained are not trusts, but are simply conditions in said deed, for the non-performance of which a forfeiture might have been declared, if violated.

Even if the defendants in error were entitled to a decree giving them the fee title to this land, they should have been held to pay back to these parties the amount paid by them to relieve the land of liens, which was the mortgage of $900, and the redemption from tax sale, $42.

The deed does not create a trust. *Zimmer* v. *Sennott,* 134 Ill. 509; *Bryan* v. *Howland,* 98 id. 625; *Siegwald* v. *Siegwald,* 37 id. 430; *Kimball* v. *Walker,* 30 id. 511; *Riggin* v. *Love,* 72 id. 553.

Mr. E. L. Sweet, for the defendants in error:

No particular form of words is necessary to create a trust. The trust and the equitable interest of the *cestui que trust* arise whenever "the intention to create it can be fairly collected upon the face of the instrument, from the terms used." *Fisher* v. *Fields,* 10 Johns. 494; 2 Story's Eq. Jur. sec. 980.

It is a rule in equity that admits of no exceptions, that a court of equity never wants for a trustee. Story's Eq. Jur. sec. 976.

Mr. Justice Bailey delivered the opinion of the Court:

It seems to us to be very clear, that the construction put upon the deed from Lucy J. Varney to Lydia M. Varney by the Circuit Court is the correct one. The deed, though con-

veying to the grantee and her heirs the entire legal estate, recites as a consideration, the sum of $1, and the faithful performance of the trusts therein mentioned, and in the habendum clause, in which the trusts referred to in the premises of the deed are fully set forth, it is provided that the grantee and her heirs are to have and to hold the land conveyed, "in trust for the following purposes," etc., and among the trusts and purposes declared is the following: "Upon the further trust to convey said property in fee simple, by good and sufficient deed, to such children as aforesaid, (that is, the issue of the grantee's marriage with Bowman Varney), upon the death of both the party of the second part and her husband." Here is a clear and manifest creation of a trust, of which the grantee's children were to become the beneficiaries, after the death of both their parents.

We have attentively considered the suggestions of counsel in support of the view that no trust was created, but that the conveyance was merely upon condition subsequent, and are not impressed with their soundness. It is not important, for the purposes of this decision, to attempt to define with accuracy the nature of the beneficial estate vested in Lydia M. Varney and her husband during their joint lives and during the life of the survivor of them. Whether the deed is to be construed as creating a trust for their benefit during that period, or as vesting in them a life estate, subject to the condition that during that time they should suitably support and educate their children, is no longer material. Those clauses, however interpreted, relate to interests which terminated on the death of the grantee and her husband, and are therefore to be regarded as *functus officio,* and as no longer of any importance in determining the equitable rights which, on the death of both the grantee and her husband, became vested in their children.

It is a principle too well settled to require citation of authorities, that no particular form of words is necessary to

create a trust. Whenever an intention to create a trust can be fairly collected from the language of the instrument and the terms employed, such intention will be supported. *Fisher* v. *Fields,* 10 John. 494; 2 Story's Eq. Juris. sec. 980. Here the language of the deed clearly indicates an intention that upon the death of both the grantor and her husband, the title should be held in trust to be conveyed to their children. It is difficult to see how a trust in favor of these designated beneficiaries could be more clearly and positively declared.

But it is said that, as the conveyance was to be made to their children upon the death of both Lydia M. and Bowman Varney, it is a trust impossible of performance, and must therefore be held to be void. This contention, though put forward with much apparent confidence will not stand the test of examination. Of course if the conveyance to their children was necessarily to be made by Lydia M. and Bowman Varney in person, and if it could not be made, consistently with the terms of the trust, until the death of the survivor of them, it of course involved an impossibility. A conveyance by them, if made at all, must be made in their lifetime, and not at or after their death. As actually happened, Lydia M. Varney, in whom the legal title was vested, died nearly three years prior to the death of her husband, and of course she could not execute a conveyance to her children at her husband's death. But it was not impossible for Mr. and Mrs. Varney, in their lifetime, to execute a conveyance which would be effectual to vest the legal title in their children upon the death of the survivor of them, and we are unable to see why the trust might not have been properly executed in that manner.

But even that was not necessary. There is nothing in the deed requiring the conveyance to their children to be made by Mr. and Mrs. Varney in person. The legal title was vested not in Mrs. Varney alone, but in her and her heirs, and the manifest intention shown by the declaration of trust was, that if Mrs. Varney should die leaving her husband surviving her,

the legal title should pass by descent to her heirs, to be held by them upon the same trusts, viz., for the use and benefit of Bowman Varney during the residue of his natural life, and at his death, to convey the legal title to the children. Such would have been the situation of the trust if no conveyance of the land had been made by Mrs. Varney in her lifetime. The instant the fact is recognized that the trust was imposed, not upon Mrs. Varney alone, but upon her and her heirs, all practical difficulty in the way of its execution according to its terms instantly disappears.

The defendants having taken a conveyance of the land from Mr. and Mrs. Varney, they took it burdened with the same trust, and the right of the complainants to a conveyance having accrued by the death of both their parents, the defendants now hold only the mere naked legal title, the entire beneficial estate being in the complainants.

Nor are the defendants entitled, as against the complainants, to the position and rights of *bona fide* purchasers of the land for value. The fair inference from the evidence undoubtedly is, that they were grossly deceived as to the condition of the title. Their grantors represented themselves to be the owners of the land in fee, and the abstract of title furnished by them so far as it went, showed that such was the character of their interest. The defendants purchased supposing that they were obtaining a perfect equitable as well as legal title, and they paid the fair cash value of the land, and there is no evidence that they had any actual notice of any of the trusts declared in the deed to their grantors. But there is no rule of law by virtue of which these facts can be charged against the complainants. They had nothing whatever to do with the transaction, and at the time most if not all of them were minors. Furthermore, the evidence of their equitable rights was on record, and the defendants were charged with constructive notice of it. Upon no principle can it be held that their interests were in any degree affected by the defend-

ants' purchase, however much the defendants may have been deceived, or whatever may have been their good faith in supposing that their grantors had a perfect title. The defendants were doubtless entitled to their remedy against their grantors for a breach of the covenants in the deed, and they may perhaps have been entitled to a remedy against the parties who compiled the abstract of title, for negligence in failing to give a proper statement therein of the trusts declared in the deed to the defendants' grantors. But none of these remedies are available in their litigation with the complainants. Here they must be held to have taken their deed with notice of those trusts, and their title must therefore yield to the superior equities of the complainants, who are the beneficiaries of those trusts.

But counsel finally insist that, even if the complainants are entitled to have the land conveyed to them, they should be charged with the amount of the mortgage thereon which the defendants have paid and discharged, and also with certain moneys which the defendants have been compelled to pay to redeem the land from tax sales made prior to their purchase. The theory upon which this contention seems to be based is, that the redemption from the tax sales having been made for the preservation of the fee, and the indebtedness for which the mortgage was given having been incurred in placing permanent improvements upon the land whereby the estate coming to the complainants was largely increased in value, it is but equitable that they should be charged with expenditures thus made for their benefit. In this view however we are unable to concur.

Between the complainants and defendants there is no privity of contract, and the right therefore to charge these expenditures against the complainants can not arise from any contractual obligation into which the complainants have entered. Whatever rights then the defendants may have in the premises must arise solely from the conveyance to them from Mr.

and Mrs. Varney. It may be admitted that by that conveyance, they obtained whatever rights or equities, as against the complainants, their grantors had, so as to be entitled to be subrogated to them, and to enforce against the complainants any claim growing out of these expenditures which their grantors might have done, if no conveyance of the land had been made. The question then is, whether the defendants' grantors, or their legal representatives, could have enforced against the complainants a claim or lien for moneys expended in improvements on the land, or in redeeming it from tax sales.

So far as this question is concerned, Mr. and Mrs. Varney and their children occupied equitable positions closely analogous to those occupied by life tenants on the one hand, and those in whom is vested the remainder in fee on the other. The rule is well settled that the burden of paying current taxes is upon the life tenant rather than upon the remainder man, and the life tenant can not, by paying taxes, or by redeeming from tax sales where he has allowed the land to go to sale for taxes, create a claim which he can enforce against the remainder man. If in this case, Mr. and Mrs. Varney had redeemed from the tax sales themselves, they would have merely discharged their own legal obligation, and we are unable to see how the defendants, after having purchased their title and thereby assumed their liability as to taxes, are in any better position in this respect than were their grantors.

Nor can a life tenant, by placing permanent improvements on the land, however much they may enhance the value of the estate, create any charge for the moneys thus expended against the remainder man. Such improvements must be deemed to have been made by the life tenant for his own benefit and enjoyment during the pendency of his own estate, and upon the termination of the life tenancy, they being a part of the realty, pass as such to the one in whom the remainder is vested, and he takes them without any liability to recompense the life tenant for his expenditures.

These well known principles applicable to the relative rights of life tenants and remainder men would seem to be equally applicable here. Mr. and Mrs. Varney, the life tenants, could not, by expending money in improvements and the payment of taxes, create a charge against their children, who were entitled in equity to the remainder. Nor have the defendants, by purchasing the estate of the life tenants, and coming in under them, placed themselves in any better position in this respect than that held by their grantors.

In our opinion the decree properly declares and adjusts the legal and equitable rights of the parties, and it will accordingly be affirmed.

*Decree affirmed.*