LEVIA CALCAGNI *et al. vs.* ANTONIO CIRINO *et al.*

JULY 25, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This litigation is now before this court for the third time. It was begun by a bill of complaint filed by the six children of Annie Cirino Calcagni, who was then deceased, all being minors and acting by their father, Peter Calcagni, as next friend. He also joined in the bill in his own interest as surviving husband of Annie Cirino Calcagni. The relief sought was that the respondent Antonio Cirino be declared to hold certain real estate in the city of Providence in trust for the benefit of the complainants and be required to account for the rents and profits accruing to him from such real estate.

After a hearing on bill, answer and evidence a decree was entered in the superior court denying such relief as to the only piece of improved real estate involved in the cause, but granting the relief sought as to the title to eight unimproved lots, and ordering an accounting for rents and profits therefrom, by the first-named respondent, who is the only real respondent and who will hereinafter be referred to simply as the respondent. On an appeal to this court by the complainants, that decree was affirmed. 62 R. I. 44, 2 A. 2d. 889. On the same date a petition, filed in this court, for a "new trial" on the ground of newly discovered evidence was denied. 62 R. I. 49, 2 A. 2d. 891.

Later a bill of review by the same complainants, to obtain a reversal of the same decree on the ground of newly discovered evidence, was filed in the superior court; and a demurrer thereto was sustained by that court in a decree, which was affirmed in this court on appeal. *Calcagni* v. *Cirino*, 63 R. I. 229, 7 A. 2d. 691.

Thereafter, by a decree of the superior court, the cause was referred to a member of the bar of this state, as a special master-in-chancery to take evidence as to an accounting between the parties and to make and file his report, with findings, to that court. Evidence was taken accordingly and

a report, with findings, was made by the master to the superior court and filed therein.

After a hearing before that court on exceptions by the respective parties to this report, a decree was entered confirming the report of the master with relation to the amount of taxes, on the lots involved in the cause, which had been paid by the respondent, plus $40.74 for a curbing assessment paid by him. By this decree it was adjudged that the respondent had paid to the city of Providence from 1917 to 1939 the sum of $1339.91 for taxes, plus the above sum of $40.74 for a curbing assessment, making a total sum of $1380.65.

By this decree it was also adjudged that this sum, plus interest thereon at the rate of 6% per annum from the time of the payment of that sum by the respondent to the city, made a total sum, due to him, of $1865.42, from which should be deducted the sum of $35 for income received by him from such lots; and that after the deduction of this sum, the total sum due to the respondent for taxes was $1830.42. It was further adjudged that, as the complainants have a one-fourth interest in the lots in question, they are responsible to the respondent for one-fourth of this sum of $1830.42, amounting to $457.60.

It was, therefore, in this decree ordered, adjudged and decreed that the complainants pay to the respondent the sum of $457.60 as their share of the net expenses incurred by him in the payment of taxes, etc.; and he was authorized and empowered "to draw his order on any funds belonging to the complainants over which he has control, for the amount found due him under the terms of this decree."

The cause is now before us on an appeal by the complainants from this decree. The only reasons of appeal on which they have relied in this court are that the decree is against the law; that it is against the evidence and the weight thereof; and that the superior court erred in allowing that part

of the master's report in which he found that the respondent had made certain payments of city taxes assessed on the lots of land involved in the cause for all of the years from 1917 to 1938 inclusive, amounting to a total of $1339.91, as set forth in the decree appealed from.

We have examined this report and also the evidence before the master upon which he based his findings as to the payment of these taxes; and we are of the opinion that we cannot properly hold that the superior court was wrong in allowing that part of the master's report. We are also of the opinion that the finding of the master, in his report, that the respondent on October 24, 1933, paid a curbing assessment of $40.74 on lot 241 on the city tax assessors' plat 123, being one of the lots involved in this cause, which finding was in substance adopted in the decree appealed from, was supported by the evidence; and that the receipt by the respondent of $35 only, in income from these lots, as recited in that decree, was supported by the evidence.

The only remaining questions raised by the reasons of appeal are questions of law, the other pertinent facts involved in the cause being now not in dispute. These facts are as follows:

Annie Cirino Calcagni was the daughter of Liberato and Filomina Cirino; and the respondent is their son. Filomena Cirino died on July 20, 1914, leaving her husband surviving. At that time the two of them were the owners in common of a certain parcel of improved real estate in Providence and also of the eight unimproved lots in Providence with which the accounting now involved in this cause is concerned. By her will the half-interest of Filomena Cirino in all this property passed to her surviving husband, for his life, and the remainder in fee therein passed to their two children, Annie Cirino Calcagni and the respondent, as tenants in common.

On August 13, 1920, Liberato Cirino, Annie Cirino Cal-
cagni and her husband Peter and the respondent sold and
conveyed the aforesaid improved real estate to a purchaser;
and the sum of $1576, being one half of the proceeds of the
sale, was by agreement deposited by the vendors in a bank
for the benefit of Liberato Cirino for his life.

Annie Cirino Calcagni died intestate on February 28,
1928; and thereupon her undivided half interest in remain-
der in the eight unimproved lots passed to her children, the
principal complainants.

In 1934 Liberato Cirino, who then had an undivided half
interest in fee in the eight lots of unimproved real estate
and also a life estate, under his wife's will, in the other half
interest, quitclaimed by deed all his right, title and interest
in these lots to the respondent. Upon the delivery of this
deed, the respondent was the owner in fee of an undivided
three-fourths interest in these lots and an estate for his
father's life in the other undivided one-fourth interest there-
in; and the remainder in fee in this one-fourth interest was
in the other complainants equally, as owners in common.

Liberato Cirino died intestate on May 12, 1936. The bank
deposit of $1576, representing one half of the proceeds of
the above-mentioned sale of the improved real estate, was
very soon thereafter divided, one half of it being received
by the respondent as his share. The other half, which origi-
nally represented the interest of Annie Cirino Calcagni in
the real estate sold, was divided, as equally as it could be,
into six bank deposits, one for each of her children, complain-
ants in this cause. Each of these deposits was put by the
respondent into the name of one of these children, payable
to his or her order after becoming of full age.

On account of the minority of the owners of these deposits
the respondent advised the bank not to make any payment
therefrom to any of these owners without consulting him;

and no such payment has been made, though one at least of the owners has become of full age. The books were left with the bank.

The first contention relied upon before us by the complainants is, in substance, that they never had any interests in the lots in question, except interests in remainder; that the lots were productive; and that therefore none of the burden of taxes on any of these lots should fall upon them. The reply of the respondent to this contention is that the lots were not productive, except to the extent of the above-mentioned sum of $35, which, so far as appears from the evidence, was not received for any period during the life of Liberato Cirino and which in the decree was deducted from the total amount of taxes. This deduction was made in the process of determining the net amount of taxes, for certain shares of which the respondent was held by the superior court to be entitled to contribution from the complainants.

In the report by the master it was found that the lots were not productive of any income, except to the extent of the $35. The justice of the superior court by whom this case was heard on exceptions to this report approved this finding. After considering the evidence, we are of the opinion that it did not show, by a clear preponderance, that Liberato, the life tenant, received any financial benefit from any of the lots, outside of the $35. We therefore cannot properly hold that this justice was clearly wrong in approving the finding of the master in this matter.

It is well settled, at least in equity, that in such a situation a life tenant is not bound to pay any of the ordinary taxes or any special assessments for betterments; but may leave the burden of them all to the remainderman or remaindermen, as Liberato Cirino did. *Sheffield* v. *Cooke,* 39 R. I. 217, 242 *et seq.,* 98 A. 161 at 170 *et seq.* See also note in 17 A. L. R. 1384, at 1394.

We therefore find that there is no merit in the first contention for the complainants.

The second contention for them is that, even if the complainant remaindermen are chargeable for their proportionate shares of the sums of money paid by the respondent for taxes on the lots and for one special assessment, they are not chargeable for interest on such sums paid before the death of Liberato Cirino. This contention is based on the argument that since 1922 the respondent has "had in his possession and directly under his sole dominion and power the sum of $788 belonging to these children (who with the exception of one Levia Calcagni, who reached her majority about one year ago) are still infants"; that, if he paid any of these taxes, he did so voluntarily, since there is no testimony that he notified these complainants or their father about them until after May 1936; and that he should have filed either a petition for authority to pay the taxes from the fund under his control or a bill in equity for partition of the property.

But according to the facts, as we understand them, the whole fund of $1576, in one half of which these complainants, after their mother's death in 1928, had an interest in remainder, was deposited in a bank for the sole benefit of their grandfather Liberato Cirino until his death, which did not occur until May 12, 1936. It is on taxes paid during that period that it is argued that these complainants are not chargeable with interest. We find no merit in any part of this argument.

The third contention made in behalf of these complainants is that they are not liable for the payment of any part of the taxes prior to the death of their mother on February 28, 1928. In our opinion this contention is correct so far as any *personal* liability by them is concerned.

Such liability by them to the respondent would have to be based on the equitable doctrine of contribution, as applied

to the payment of taxes on real estate. But that doctrine is that if one of several owners of real estate in common or as joint owners, against whom a tax on such real estate is assessed, pays the full amount of the tax in order to prevent the real estate from being sold for payments of the tax, he has the right to be reimbursed by the other or others for the proportionate share or shares of such other or others. 6 R. C. L. 1049, "Contribution", § 12. Note in 48 A. L. R. 586 at 587, 591.

A similar doctrine is also applied in cases where an incumbrance binding equally several parcels of property is paid by the owner of one of them. *McAdam* v. *Honey,* 20 R. I. 351, 39 A. 189; 5 Pomeroy, Eq. Jurisp. 5174, § 2339.

But in the instant cause, until their mother's death none of these complainants had any interest whatever in the lots upon which the taxes were assessed. Therefore, as to the payment by the respondent of any tax assessed and payable prior to the death of their mother, the liability for contribution would be upon her and not upon them; and that personal liability of hers for contribution would not pass to them by reason of her death.

There is, however, another equitable doctrine which is applicable in this cause and that is the doctrine of subrogation. This doctrine, as applicable to the payment of taxes on land, is that if one of several owners in common of real estate pays the whole of an assessed tax thereon, under the circumstances described above, he has an equitable lien on the interest or interests of the other owner or owners in common, for the proportionate share or shares of such owner or owners in the tax. *Hurley* v. *Hurley,* 148 Mass. 444, 19 N. E. 545; 3 Cooley, Taxation, (4th ed.) § 1266.

In the instant cause, for any tax paid by the respondent which was assessed and payable on any of the common property during the time when he and Annie Cirino Calcagni

were the coowners of a future estate therein, he would have an equitable lien on her interest for her half of the tax. As she did not pay her half, the lien, on her death intestate, would follow her interest in the property and attach to the undivided interests of her children therein, as her heirs, the interest of each being subject to a lien for its proportionate share of that part of the tax for which she had been liable. Therefore, the decree appealed from should be so modified as to give the respondent the benefit of such liens.

The fourth contention for the complainants is that the respondent is not entitled to any contribution "for taxes paid beyond the 6 year period of the statute of limitations." But this is a proceeding in equity, in which an accounting was sought by the complainants, among other relief; and the decree now before us on appeal was the result of such accounting. The relief awarded to the respondent in that decree is based on the purely *equitable* doctrine of contribution and not on any *legal* rights of his. We are of the opinion, therefore, that the effect of any delay by the respondent, in asserting his right of contribution from the complainants, is governed, not by the statute of limitations, but by the doctrine of laches and that the evidence shows no such delay by the respondent as would, under that doctrine, deprive him of any equitable right against the complainants. *Chase* v. *Chase,* 20 R. I. 202.

The only other contention, made in behalf of the complainants and not already disposed of by us herein, is that the order of the superior court, contained in the decree appealed from and directing and empowering the respondent to draw on funds belonging to the complainants who are children of Annie Cirino Calcagni for the amount found to be due to him is improper. That part of the decree which is the subject of this contention is the last part of it, quoted near the beginning of this opinion.

It is stated, in the brief for the complainants, that the words in that part of the decree "funds belonging to the com-

plainant over which he has control" refer to the above-mentioned bank deposits standing in their names. But we have serious doubt whether they should be so construed, since we cannot find, from the evidence, that the respondent has control over these deposits.

Moreover, there is evidence in the cause that he allowed the eight unimproved lots to be sold for the 1935 or 1936 taxes or both and had them purchased by his attorney; and that he then sold and conveyed four of these lots to a purchaser and received therefrom the sum of $200 and a note for $400 secured by a mortgage on the lots. The accounting covered by the decree now before us does not seem to have included the proceeds of this sale.

In view of the uncertainty as to the meaning and scope of this provision in the last part of the decree, we are of the opinion that it should be omitted.

The decree appealed from is affirmed in part and modified in part. On October 7, 1940, the parties may present to this court, for our approval, a form of decree to be ordered to be entered in the superior court.

*J. Raymond Dubee,* for complainants.

*Benjamin Cianciarulo,* for respondents.