206 P.2d 706

**ZARING v. LOMAX et al.**

**No. 5107.**

Supreme Court of New Mexico.
May 12, 1949.

Rehearing Denied June 15, 1949.

W. A. Keleher, A. H. McLeod, and Edwin L. Swope, all of Albuquerque, and John Beasley, of Santa Rosa, for appellant.

Rodey, Dickason & Sloan, of Albuquerque, for appellees.

PER CURIAM.

On motion for rehearing the original opinion filed herein is withdrawn and the following subsituted:

BRICE, Chief Justice.

This is an action brought by plaintiff (appellant) to quiet title to a lot in the town of Santa Rosa, New Mexico. The defendant, Robert Lee Baker (hereinafter referred to as defendant) filed a cross action also to quiet title. This property was owned by Lilly B. Wisner, who died testate in 1933. By her duly probated will the lot and the other property were devised to her son, William C. Baker for life, and the remainder over "to the children and issue of his body." William C. Baker married the defendant Dorothy Maxine Baker Lomax, from which union the defendant was born in November, 1939. The Bakers were divorced in 1942. At the time of the district court trial in July 1947, Baker's whereabouts were unknown.

On June 9, 1939, Baker and wife conveyed the lot to W. S. Fluitt. The estate in remainder was not mentioned in the deed nor in any subsequent conveyance. On October 1, 1945, Fluitt, by warranty deed, purported to convey the lot to plaintiff. On November 27, 1945, plaintiff and wife mortgaged it to defendant, Victor E. Lemke.

In the meantime the taxes for 1938 had become delinquent, and on December 4, 1939, the lot was sold to C. J. Webb for delinquent taxes. Thereafter, on June 1, 1942, the time for redemption having expired, the county treasurer, in consideration of $5.40 (the amount of taxes, penalties, interest and costs), executed and delivered to Webb a tax deed purporting to convey the lot to him. On November 28, 1945 Webb, in consideration of repayment for the amount he had spent to secure the tax deed (we assume $5.40) executed and delivered to plaintiff a quitclaim deed to the lot. The respective claims of the parties are as follows:

The defendant asserts that he is the owner of the remainder by virtue of his grandmother's will; that the full title will vest in him upon the death of his father; that the plaintiff, who is the grantee of the grantee of his father, took only his father's life interest in the property and became liable to pay the taxes; that the purchase of the Webb tax title was in effect the payment of taxes which it was plaintiff's duty to pay as the successor in title to the life estate of his father.

The plaintiff contends that the purchase of the property by Webb at the delinquent tax sale, and the delivery to him by the county treasurer of a tax deed, vested in Webb a new and paramount title to the lot from the state, which extinguished all prior

titles, equities and interests of every and all persons in the property; that Webb's tax title destroyed the title of defendant as well as the life estate, so that only the tax title existed at the time the lot was conveyed to plaintiff; that he succeeded to Webb's rights by virtue of Webb's quit-claim deed, and now owns the fee simple title.

The tax deed delivered to Webb is not attacked, and is prima facie valid. Sec. 76-720, N.M.St. 1941 We must hold that it conveyed to Webb a new and paramount title to the lot, from the state; an independent and complete grant that extinguished all prior titles, interests and equities that were held by plaintiff, the defendant and every and all others that claimed or could claim any interest therein. Alamogordo Imp. Co. v. Hennessee, 40 N.M. 162, 56 P.2d 1127. The Webb tax title became effective while the life interest in the lot was owned by Fluitt, who was plaintiff's grantor, and the grantee of William B. Baker who originally owned the life estate in the lot.

The rule is universal that it is the duty of the life tenant to pay the taxes on all the property in which he holds a life interest, Higginbotham v. Harper, 206 Ark. 210, 174 S.W.2d 668; Dormer v. Walker, 101 Colo. 20, 69 P.2d 1049; Annable v. Ricedorff, 140 Neb. 93, 299 N.W. 373; Hanley· v. Wadleigh, 88 N.H. 174, 186 A. 505; Vaughan v. Metcalf, 274 Ky. 379, 118 S.W.2d 727; Rich v. Allen, 226 Iowa 1304, 286 N.W. 434; Duffley v. McCaskey, 345 Mo. 550, 134 S.W.2d 62, 126 A.L.R. 853; 33 Am.Jur. p. 964, Sec. 439; 51 A.J. "Taxation" Sec. 946; 31 C.J.S., Estates, §§ 35 and 47; 1 Restatement Law of Property Sec. 128; 4 Thompson on Real Property (Perm. ed.) Sec. 1620; at least, as some courts hold, to the extent of the income received, or rental value, of the life estate. In re Banfield's Estate, 137 Or. 256, 299 P. 323, 3 P.2d 116; In re Hone's Est., 152 Misc. 221, 274 N.Y.S. 101; Lantz' Estate v. McDaniel, 99 Ind.App. 233, 190 N.E. 130; In re Morton's Estate, 74 N.J.Eq. 797, 70 A. 680; Nation v. Green, 188 Ind. 697, 123 N.E. 163; Calcagni v. Cirino, 65 R.I. 408, 14 A.2d 803. See annos. in 17 A.L.R. p. 1384 et seq.; 94 A.L.R. p. 311 et seq., and 126 A.L.R. p. 862 et seq.

Each successor to the life estate steps into the shoes of his predecessor as to rights and liabilities, except he cannot be held personally bound to pay taxes levied before he owned the life estate, but such taxes are payable out of the income from the property. Mathews v. O'Donnell, 289 Mo. 235, 233 S.W. 451; Bullock v. People's Bank, 351 Mo. 587, 173 S.W.2d 753; Sargeant v. Sargeant, Tex.Com.App., 118 Tex. 343, 15 S.W.2d 589; King v. Boettcher, 96 Neb. 319, 147 N.W. 836; Rich v. Allen, 226 Iowa 1304, 286 N.W. 434; Murch v.

Smith Mfg. Co., 47 N.J.Eq., 193, 20 A. 213; Federal Land Bank v. Newsom, 175 Miss. 114, 161 So. 867; Wiswell v. Simmons, 77 Kan. 622, 95 P. 407; Lohmuller v. Mosher, 74 Kan. 751, 87 P. 1140, 11 Ann.Cas. 469.

It being the duty of the life tenant to pay the taxes, if he purchases the property at a tax sale or buys a tax title, it inures to the benefit of the remainderman; or as is often said, the purchase will be treated by a court of equity as a payment of taxes or as a redemption from the tax sale, Swan v. Rainey, 59 Ark. 364, 27 S.W. 240; Rich v. Allen, supra; or as is said by other courts, the life tenant cannot acquire a tax title and hold it against the remainderman, First Congregational Church v. Terry, 130 Iowa 513, 107 N.W. 305, 114 Am.St. Rep. 443; nor can the assignee of the life tenant purchase a tax title for his own benefit alone. The effect is the same as though he was the original life tenant. Prettyman v. Walston, 34 Ill. 175; Little v. Edwards, 84 Wis. 649, 55 N.W. 43; Hagan v. Varney, 147 Ill. 281, 35 N.E. 219; Rich v. Allen, supra.

The rule has been stated as follows:

"When an estate for life and a future interest exist in the same land, and both interests become subject to sale for the collection of a sum of money, and, as between the owner of the estate for life and the owner of such future interest, this whole sum is payable by the owner of the estate for life, or out of his estate, then the owner of the estate for life, by acquiring the interests so sold, acquires no interest which he can assert in derogation of the said future interest.

"Comment: * * *

"b. The owner of the estate for life acquires 'the interests so sold,' within the meaning of this Section whether he buys directly and in his own name at the time when such interests are offered for sale, or buys through an agent, or other person acting in collusion with him, or later buys from a person who acquired on the original sale an ownership which, by him, could have been asserted in derogation of the future interests included in such sale." Restatement of Law of Property, Sec. 149.

Under these authorities, the plaintiff as successor to Fluitt, could not purchase a tax title that would deprive the remainderman of his interest in the lot, unless the fact that the tax title had become the paramount title before plaintiff purchased from Fluitt, would make a difference.

We have not found in any case an exception to the rule in favor of one whose title was inferior to the tax title. It is necessarily true that in all cases where the tax title is valid, in the absence of some statute creating a contrary condition, it is paramount; and all other titles are strick-

en down. Alamogordo Imp. Co. v. Hennessee, supra. Nevertheless, when a tax title is bought in by one who, except for the tax title, would own a life estate in property, his purchase is for the benefit of the remainderman as well as for himself, notwithstanding the owner of the tax title could have quieted his title as against the holder of the life estate and remainderman, or could have sold it to a stranger to the title who could have done so.

■ We hold that one who buys a life estate from the tenant for life after a valid tax title had become effective, and thereafter buys the tax title, his purchase inures to the benefit of the whole estate, and will be held in effect a redemption from the tax sale.

■ The Lemke mortgage is effective only against the life estate of plaintiff.

The effect of the district court's decree was to hold that plaintiff had an estate in the lot that would terminate upon the death of William B. Baker; and that this estate alone was subject to the Lemke mortgage; that defendant was the owner of the remainder free from all claims or liens of plaintiff and Lemke, and would own the complete title upon his father's death, subject to the possible rights of any other children that have been, or may be born to William B. Baker. This decree seems to conform to our conclusion as stated herein.

The decree of the district court should be affirmed, and it is so ordered.

SADLER and McGHEE, JJ., concur.

LUJAN, Justice (dissenting).

I agree with the legal principle pronounced by the majority, namely, "The rule is universal that it is the duty of the life tenant to pay the taxes on all the property in which he holds a life interest." There is no question that a person standing in a fiduciary relationship towards his ward cannot suffer the realty to be sold for delinquent taxes and then purchase the same either from the state or from one who owes a duty to his remainderman. The policy of the law prohibits such a transaction, because he could not indirectly acquire that which the law would not allow him to acquire directly. Was Zaring, the plaintiff, a life tenant who owed a duty to the defendant? The record discloses the following facts: The lot in question was owned by Lilly B. Wisner at the time of her death on or about March 1, 1938. She left a will, which was duly admitted to probate in Guadalupe County, New Mexico. It provided that the property involved in this action be devised for life to her son William C. Baker, with remainder in fee to the children and issue of his body. This devise reads as follows:

"Second. I give and bequeath to my beloved son William C. Baker a life estate

in all my property both real and personal so that he may enjoy the use and income from the same during his lifetime, and upon his death it is my wish and will that all of my said property shall go in fee to his children, issue of his body, in equal parts, share and share alike."

The son married one Dorothy Maxine Baker Lomax, and as a result thereof the defendant, Robert Lee Baker, was born in November, 1939. In 1942, they were divorced, and at the time of the hearing, the whereabouts of William C. Baker were unknown to any one. On January 9, 1939 William C. Baker and his wife conveyed by warranty deed this lot to W. S. Fluitt and wife, which made no mention of the life estate. On December 4, 1939, this lot was sold by the County Treasurer of Guadalupe County to one C. J. Webb, a total stranger, under Tax Sale Certificate No. 1232, for the delinquent taxes of 1938. Thereafter, on June 1, 1942, pursuant to the sale, the county treasurer made, executed and delivered Tax Deed No. 328 to Mr. Webb for the taxes, penalties, interest and costs, more than two years having elapsed since the sale and the property not having been redeemed. Fluitt allowed this property to be sold for delinquent taxes during the time he held it as a life tenant and thereafter failed to redeem it before the issuance of the tax deed to Webb, as provided for by Section 76-713, 1941 Compilation. The time for asserting

such statutory right thus expired and the right of redemption was lost. Hood v. Bond, 42 N.M. 295, 77 P.2d 180; Aragon v. Empire Gold Mining and Milling Co., 47 N.M. 299, 142 P.2d 539; Eigner v. Geake, 52 N.M. 98, 192 P.2d 310. Section 76-713, supra, provides as follows:

"Property sold under the provisions of this act may be redeemed by the owner *or by any person having a legal or equitable right* therein at any time before two (2) years from the date of the sale * * *." (Emphasis ours.)

If Fluitt had paid the taxes, he would have been doing what the law required him to do, in that he had the duty to pay same. If he had purchased the tax title or purchased it from Webb, after he suffered the property to be sold for delinquent taxes, he could acquire no interest adverse to his remainderman, and in fact would have merely been redeeming the taxes. If he had sold the property thus acquired from the county or Webb to the plaintiff, plaintiff would have received no better title than he himself had. But here it cannot be said that the plaintiff owed any duty to the defendant (appellee). Under the facts and circumstances of this case I find no logical reason to hold that Zaring's purchase of this lot from Webb, the tax title owner, and a stranger to the parties, was only redeeming the property for the benefit of the defendant.

On October 1, 1945, exactly three years and four months after the tax deed had been issued to C. J. Webb, the Fluitts purported to convey this lot by warranty deed to Zaring. This was an idle gesture and nullity, since any interest that the Fluitts might have had, was extinguished by the tax deed. There being no dispute as to the validity of the tax deed, upon its delivery and recordation, it clothed C. J. Webb, not merely with the title of the person who had been assessed for the taxes and who had neglected to pay them, but with a new and paramount title in the land, under the independent and complete grant from the sovereign, which extinguished all prior titles, as well as all equities arising out of them. The sale operated in rem, therefore, all parties were bound by it. Alamogordo Improvement Co. v. Hennessee, 40 N.M. 162, 56 P.2d 1127; Alamogordo Improvement Co. v. Prendergast, 43 N.M. 245, 91 P.2d 428, 122 A.L.R. 1277. Surely under the provisions of our tax statutes it cannot be said that the county and the county's vendee took the legal title subject to outstanding claims.

On November 28, 1945, C. J. Webb and his wife, the tax title owners, by quitclaim deed conveyed their interest to the plaintiff. This court has declared that a tax title is not derivative but original, is not limited to passing title of him whose name the land is taxed, but divests all interest in the land and vests in the grantee an independent and paramount title. The title of C. J. Webb, derived from a valid tax sale deed, was an indefeasible title, good as against the life estate of the Fluitts and their remainderman, as well as against the whole world. No collusion or fraud having been alleged or proven, the title acquired by the appellant from C. J. Webb should prevail.

The appellee's claim of interest was divested by the tax deed, and the court erred in holding otherwise. The judgment should be reversed, and the cause remanded, with directions to enter judgment in favor of the plaintiff. For the reasons stated, I dissent.

COMPTON, J., concurs.